## STEPHEN RATKE *vs.* JAMES R. RINKER.

*Partnership: estoppel.   Burden of proof.   Mechanics' lien.*

If one holds out another as his partner in a transaction, although there was as a fact no such actual partnership, and thereby induces a third party to make a payment to the other believing it to be a partner, such third party is thereby protected in the payment of money.                            p. 295

A. contracted with B. to build a house upon land owned by A., and upon the completion of the house, in compliance with the contract, the full contract price not having been paid B. filed a mechanics' lien against the property and prayed for a decree for a sale of so much of the property as might be necessary to pay the balance due on the contract price; A. claimed that he had made a payment of this balance to C., whom he alleged B. had represented to have been a partner with him in the transaction. *Held,* that the burden of proof was upon A. to substantiate his claim, and in the absence of such proof the property should be sold as prayed for the satisfaction of the lien.                            p. 296

*Decided January 11th, 1912.*

Appeal from the Circuit Court of Allegany County, sitting in equity (HENDERSON, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*F. Brooke Whiting* (with a brief by *J. W. S. Cochrane* and *Whiting and Eppler*), for the appellant.

*Charles R. Morris* and *Harry R. Donnelly*, for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the appellee filed his bill in the Circuit Court for Allegany County, in equity, alleging therein that he, in August, 1910, contracted with the appellant to build for him a dwelling house on a lot of ground owned by the appellant in the city of Cumberland. By the contract the appellee was to do the work and furnish the materials to be used in the erection of said building. The bill further alleged that the plaintiff performed his part of the contract in accordance with the terms thereof, but alleges that the defendant has failed to pay unto him the whole of the amount owing unto him for the work done and materials furnished in the erection of said building as agreed upon by and between the plaintiff and defendant, and because of the defendant's failure to pay the whole amount thereof the plaintiff filed in the office of the clerk of the Circuit Court for Allegany County a mechanic's lien for the amount so unpaid, against said building and the ground upon which it is erected as well as the ground immediately adjacent thereto, claiming therein that the amount of balance still owing him by the defendant is $573.59.

The bill then alleges that the above amount is still unpaid and in the prayer thereto the Court was asked to pass a decree for the sale of said property, or so much thereof as was necessary for the payment of said mechanic's lien claim.

The defendant in his answer to the bill not only admitted the execution of the contract, as the bill alleged, but also admitted that the "defendant fulfilled his contract as alleged in the bill," but averred "that said contract was fulfilled and completed not by the plaintiff alone, but in conjunction with one George A. Coleman, his partner in said contract."

The answer then admits the filing of said mechanic's lien, but charges that the claim thereunder "is wholly erroneous and unfounded," and alleges that the defendant owed no part of the amount claimed to be owing by him to the plaintiff, but alleges that the sum so claimed to be owing was duly paid by the defendant to "Coleman and Rinker, partners aforesaid," upon the completion of the work.

The learned Court below after considering the evidence taken in the case passed a decree for the sale of the property as prayed, and it is from that decree that this appeal is taken.

It is not claimed by the defendant that he has paid to the plaintiff the entire amount that was to be paid under the contract for the erection of the building therein named, for of this sum he alleges that he has paid the amount so claimed by the defendant to Coleman for the alleged firm of Coleman and Rinker, although the record discloses that the amount paid to Coleman was only $546.59. The defendant's contention is that a co-partnership existed between Rinker and Coleman in the erection of said building and that the payment to Coleman, one of the partners, was a payment to the co-partnership or firm, and that such payment together with the amounts previously paid was in full payment of the amount to be paid under the contract with the plaintiff for the work done and materials furnished thereunder.

The plaintiff, however, denies the existence of the alleged co-partnership and contends that the amount paid to Coleman without authority from him was not a payment upon the amount to be received by him under his contract with Ratke, the defendant, and that it cannot be so considered.

Therefore, as he contends, the above stated amount is still owing to him by the defendant.

It will thus be seen that the defendant makes his defense in this case upon the existence of the alleged co-partnership.

Coleman testified that prior to the execution of the contract mentioned, he had formed a co-partnership with Rinker "on some work in South Cumberland," and while at this work he was told by Rinker that he had been asked by Ratke, who was thinking of building a dwelling, to prepare for him plans therefor. This Rinker undertook to do and submitted several plans to Ratke, but none of them were accepted, and that it was then that he, Coleman, with Rinker, went to see Ratke and talked with him about the kind of house he wanted and upon their way home Rinker suggetsed to him that they do the work together. Coleman then prepared the plans, which when carried by Rinker to Ratke were accepted by the latter and a contract was then executed by Rinker and Ratke, but Rinker told him when he returned after the execution of the contract, that they would draw a contract between them in regard to the work, "but we never did." Nothing more seems to have been said between Rinker and Coleman as to the partnership, except that Coleman later on in his testimony stated that it was understood "when we were done that we were to split even on the profits." The work was started, but before it was completed the plaintiff was taken sick with typhoid fever and was for six or more weeks confined at his home and hospital. Coleman worked upon the building both before and after Rinker was taken sick, and during the illness of the plaintiff and until the building was completed the work was superintended by him exclusively. It was while Rinker was sick that Coleman called upon the defendant for the money that was paid to him. The money so paid to him, as he testified, is still in the hands of his attorney, Mr. Cochrane.

Mr. Ratke testified that Rinker submitted to him the plans for the house. He did not know that Coleman or anyone

else had anything to do with the plans, although he heard
Coleman say to Rinker on the visit to his house, when the
plans submitted to him were not accepted, "we will have to
draw a new plan." He further testified that after the
house was finished Coleman called upon him saying he needed
money, to which he replied, "All right," that he had the
money in Mr. Cochrane's office and directed Coleman to
meet him there the following morning, at which time he
received a check for the amount of $556.59. Ratke when
asked if he thought Coleman had the right to receive the
money, said Mr. Rinker told him when he made the plans
that Coleman was the architect and he thought as Mr. Rinker
was sick that Mr. Coleman, as architect, had the right to
collect the money.

Neither by the testimony of Ratke nor Coleman is it
shown that when Coleman called upon Ratke for the money,
any representations were made to him by Coleman as to his
being a partner of Rinker. On the contrary Ratke thought
it was proper to pay Coleman because he was told by Rinker
that he was his architect in the erection of the building. In
addition to this there is some slight testimony in the record
of the holding out by Rinker of Coleman as a partner. Keys,
a witness called by the defendant, testified that in a con-
versation with Coleman at which the plaintiff was present,
Coleman said to him that they, Rinker and himself, were
partners, to which Rinker made no reply. Rinker, how-
ever, denies this conversation, or at least said that if it was
said he did not so understand it. Also one of the sub-
contractors testified that his bid as sub-contractor was made
out to Coleman and Company, although he was not told
by either of them that a partnership existed between them;
he assumed from what was said and done that they were
partners. The money, however, when paid to the sub-con-
tract or was paid by the check of Rinker. The record also
discloses that one of the witnesses testified that he overheard
Rinker on one occasion when in a dispute or altercation

with Coleman, "say such business would not do," and said, "there would be a split if there was not a change made." This was construed to be a threat to dissolve the co-partner-ship. To this, however, we cannot subscribe, for it would be equally applicable to an intention on his part to sever his relations if Coleman was only a foreman, as claimed by the plaintiff.

Nowhere in the record does it appear that Coleman was ever held out to Ratke as a partner of Rinker in the erection of said building, or that he was induced to pay to him the money because of such co-partnership, for in his testimony, as we have stated, he said he paid him because he thought he had the right as architect to collect it; and, moreover, as Coleman testified, Rinker told Ratke that he, Coleman, would be the architect on the job.

The plaintiff, Rinker, testified that he was called upon by Ratke to make him plans for a house, which he did; that he finally adopted one of those made by him. A contract was then executed by and between him and Ratke, by which he should do the work and furnish the material in the erec-tion of the building at and for the sum named therein. That before completing the building he was taken sick and remained sick for six weeks or more at his home and in the hospital. While sick Coleman acted as foreman in the erec-tion of the building. That he made payments to him several times upon account of the services so rendered by him. Upon recovering from his illness he called on Ratke for the payment of the money and was told by him that he had paid Coleman. He notified Ratke that he would hold him for the money. That there was no agreement of partnership between them, nor had Coleman any interest in the job. It was then that he sent for Coleman to come to his house. After repeated requests he came and when asked why he got the money and how he managed to get it, he said he just told Ratke that he wanted it and needed it and Ratke let him have it. He then promised that he would turn it over

to him when plaintiff was able to attend to business. That he had every cent of the money and would account for that which he had spent and would turn the balance over to the plaintiff. Later he refused to settle and the money has never been paid to him.

From this evidence we can not find that a co-partnership actually existed between Rinker, the plaintiff, and Coleman for the erection of the building mentioned herein, and we think it is shown from the testimony that if any co-partnership theretofore existed as to the erection of other buildings, that it was for such buildings only and was concluded at the completion of such work. It is shown by the testimony of Coleman who testified that after the visit of him and Rinker to the home of Ratke, that the plaintiff suggested that they do the work together. If a general co-partnership was at the time existing between them, there would have been no necessity for this suggestion on the part of Rinker.

It is contended, however, that the defendant was protected in the payment to Coleman of the amount so paid to him by reason of Coleman's being held out as a partner of Rinker in this transaction. There is but little evidence as to this fact and in our opinion it is entirely insufficient to protect the defendant in the payment of this money. If it were a fact that Rinker, the plaintiff, had held out Coleman as his partner in this transaction, although he was not an actual partner, and had thereby induced the defendant, Ratke, to pay to him the money mentioned, believing him to be a partner, the defendant would, no doubt, have been protected thereby in the payment of said money. 30 *Cyc.* 391. Here, however, the contract was made with Rinker alone; it was not made with Rinker and Coleman as partners, and this fact was known to the defendant. He knew full well with whom he was contracting. Coleman was not held out to him by Rinker or by anyone else as a partner with Rinker in this transaction and his work as foreman upon the building and the exclusive superintendency thereof during the sickness of the plaintiff, which was known to the

defendant, is altogether consistent with the claim of the plaintiff that Coleman was only a foreman in said work.

It is not claimed by the defendant that he was induced to make the payment to Coleman because he believed him to be a partner, for he particularly states in his testimony that he paid it to him believing that he had a right to collect it as an architect employed in the erection of the building. In fact, he had never heard that he was a partner or that he was ever held out as such partner. Therefore the payment to him could not have been induced by any alleged fact of which he had no knowledge.

From what we have said the learned Court below committed no error in passing decree appealed from, and the decree will therefore be affirmed.

*Decree affirmed, with costs to the appellee.*